**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEW JERSEY

```
FILED
JAMES J. WALDRON, CLERK

June 17, 2014

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: /s/Nelson DosSantos, Deputy
```

|  |  |
|---|---|
| IN RE: | CHAPTER 7 |
| Inteco International Trade Corp | CASE NO.: 10-45337 (NLW) |
| Debtor. | **OPINION** |
| Barbara A. Edwards, as Trustee, | |
| Plaintiff, | ADVERSARY NO.: 12-2137 |
| v. | |
| Peter Sinetos, | |
| Defendant. | |

**Before:**   **HON. NOVALYN L. WINFIELD**

**A P P E A R A N C E S :**

Harry M. Gutfleish, Esq.
Joseph Oliver, Esq.
Forman Holt Eliades & Youngman LLC
80 Route 4 East
Suite 290
Paramus, NJ 07652
Attorneys for Trustee

Lawrence Spivak, Esq.
87-40 165th Street
First Floor, Apartment NW
Jamaica, NY 11432
Attorney for Defendant

This matter is before the court on the Trustee's Motion for Partial Summary Judgment against Peter Sinetos ("Defendant" or "Mr. Sinetos") on Counts One, Two and Three of the complaint. For the reasons set forth below, the Trustee's Motion for Partial Summary Judgment is granted.

## JURISDICTION

This court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on September 18, 2012. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (F), (H) and (O).

## BACKGROUND

### a. Procedural Background

An involuntary Chapter 7 petition was filed against Inteco International Trade, LLC ("Debtor") on November 15, 2010 ("Petition Date"), and an order for relief under Chapter 7 was entered on January 25, 2011. Initially, the United States Trustee appointed Daniel J. Yablonsky as the Chapter 7 Trustee. Thereafter, on August 18, 2011, the United States Trustee appointed Barbara A. Edwards as the successor trustee ("Trustee"), and she serves in that capacity to date. As part of the administration of this case, the Trustee caused her counsel to commence the instant adversary proceeding against Mr. Sinetos pursuant to Bankruptcy Code §§ 547, 548 and 550, as well as N.J.S.A. § 25:2-25a, N.J.S.A. § 25:2-25b, N.J.S.A. § 25:2-27a and N.J.S.A.

§25:2-27b. In September of 2013, the Trustee moved for partial summary judgment on Counts One, Two and Three of her complaint.

### b. Factual Background

Prior to formation of the Debtor, Mr. Sinetos and Michael Antona ("Mr. Antona") were each fifty percent shareholders in Inteco Corp.. In May 2008, Mr. Sinetos and Mr. Antona entered into a Limited Liability Company Agreement (the "LLC Agreement") with Inteco Investor LLC to form the Debtor in order to acquire the assets of Inteco Corp. The LLC Agreement also provided that Mr. Sinetos and Mr. Antona, among others, were to serve as the Debtor's managing members. Mr. Sinetos served as a managing member of the Debtor from May 9, 2008 through the Petition Date.

Pursuant to an Asset Purchase Agreement (the "APA") dated May 27, 2008, the Debtor acquired the assets of Inteco Corp. for the sum of $813,622.00.[1] (Gutfleish Cert., Ex. F) Under the terms of the APA, the Debtor paid Inteco Corp. $500,000.00 by wire transfer and gave Inteco Corp. a promissory note ("Purchase Note") in the amount of $313,622.00. (Id.) Under the terms of the Purchase Note, the Debtor was obligated to make forty-two (42) monthly payments of $7,467.19 to Inteco Corp. (Gutfleish Cert., Ex. G)

Essentially simultaneous with the execution of the APA between Inteco Corp. and the Debtor, Mr. Sinetos and Inteco Corp. entered into a Stock Repurchase Agreement under which Inteco Corp. reacquired the 50% shareholder position of Mr. Sinetos. (Gutfleish Cert., Ex. H) The terms of the Stock Purchase Agreement mirrored the terms of the APA. Inteco Corp. agreed to pay Mr. Sinetos $813,622.00 as follows: (a) $500,000.00 on execution of the Stock

---
[1] The Debtor also assumed the trade debt and other liabilities of Inteco Corp.

Repurchase Agreement; and (b) $313,622.00 under a promissory note ("Inteco Note") payable over 42 months in installments of $7,467.19. (Gutfleish Cert., Exs. H & I)

The Debtor and Mr. Sinetos also entered into a Consulting Agreement dated May 27, 2007 under which Mr. Sinetos agreed to provide consulting services to the Debtor. (Gutfleish Cert., Ex. J) Under the Consulting Agreement, the Debtor agreed to pay Mr. Sinetos $12,532.81 each month for his services. (Id.)

It does not appear that Mr. Sinetos rendered any significant services in exchange for the monthly payment of $12,532.81. Trustee's counsel deposed Mr. Sinetos on February 8, 2012 regarding the transaction between and among the Debtor, Inteco Corp., and Mr. Sinetos. With regard to services rendered under his Consulting Agreement, Mr. Sinetos testified as follows:

> Q. Did you provide any consulting services to the Inteco company after 2008?
>
> A. What's the definition of "consulting?"
>
> Q. What services did you provide to the company?
>
> A. On the phone, discussed the business, what direction should the company goes. Basically, that's the only thing I did.
>
> Q. About how many hours a week or month did you spend on the business?
>
> A. How many hours? Not many. Not many. Several meetings, actually, two, maybe three meetings. Towards the end I did a lot more than what I did in the beginning.

(Gutfleish Cert., Ex. A 60:21 to 61:9)

From this testimony, it is evident that Mr. Sinetos did not provide many services in exchange for the $12,532.81 that the Debtor was remitting to him monthly. Further, Mr. Sinetos

plainly stated that he understood that the payments from the Debtor were intended to repay his investment in Inteco Corp.:

> Q. In your mind was this agreement, you know, intended to get you back the money that you invested in Inteco?
>
> A. Absolutely.
>
> Q. It wasn't intended to compensate you for working for the company going forward. Correct?
>
> A. The only compensation they had told me is if you want to maintain your 20 percent you have to participate, which is – I had no problem.
>
> Q. But were you the person who structured the payments reflected on page two?
>
> A. No, Sir. That's the way it was presented for me.
>
> Q. But did you do the math?
>
> A. The only thing I wanted to know, how will I get my million point seven?
>
> Q. And how were you going to get your –
>
> A. $20,000 a month, half a million, 20 – with no interest on holding the note and 130,000 every anniversary. That's the only thing I knew at the end of three and a half years, whatever the term was, I'm out of the picture, I own 20 percent and hopefully, I can make the money I lost for all of these years, have the investment.

(Id. 61:10-62:9)

The foregoing colloquy further demonstrates that the Debtor also was paying Mr. Sinetos well in excess of the monthly amounts required under the Consulting Agreement. The court finds that it is no accident that the difference between the $20,000.00 monthly payment made by the Debtor and the $12,532.81 monthly payment required under the Consulting Agreement

("Consulting Transfers") with Mr. Sinetos amounts to $7,467.19. This also is the exact monthly payment provided to Mr. Sinetos under the terms of his Stock Repurchase agreement with Inteco Corp.[2]

Under further questioning from the Trustee's counsel, Mr. Sinetos also stated:

Q..  May 2008 through 2010 do you know the total amount of payments that you received from Inteco?

A.   Like I said, from day one I got half a million dollars and every month thereafter I picked up $20,000. Whatever it comes out to be, that's what it is, to the last payment. I didn't miss one payment. Might have been late but I would get angry. I would go crazy. I would go there. All I wanted is my money.

(Id. 70:2-11)

As recounted in the Trustee's Complaint, from July 1, 2008 through June 2, 2010, each month a transfer of $20,000.00 was initiated from the Debtor's bank account at JP Morgan Chase Bank, N.A. and deposited in Mr. Sinetos' account at Bank of America, N.A. (Gutfleish Cert. Ex. B) These transfers amount to $460,000. In his answer, Mr. Sinetos admits receipt of these funds. (Answer, ¶ 2)

To evidence insolvency in the period preceding the involuntary bankruptcy petition, the Trustee notes that in June 2008, the Debtor and Wells Fargo Trade Capital Services, Inc. ("Wells Fargo") entered into an Amended and Restated Loan and Security Agreement ("Loan Agreement") under which Wells Fargo loaned $5,840,561.39 to the Debtor. (Gutfleish Cert., Ex. C). The loan was secured by substantially all of the Debtor's assets. (Id.) As a result of the Debtor's failure to make the payments due to Wells Fargo under the Loan Agreement, the Debtor

---

[2] $7,467.19 is also the sum payable monthly by the Debtor to Inteco Corp. under the APA. These payments, for ease of reference, are subsequently described as "APA Transfers."

surrendered the collateral to Wells Fargo on or about October 8, 2010 (Gutfleish Cert., Ex. K) To also prove insolvency, the Trustee requests that the court deem admitted the Trustee's Requests for Admissions that were served on Mr. Sinetos and for which responses were due on July 25, 2013. Requests for Admission #34 specifically requests admission that the Debtor was insolvent at all times from July 1, 2008 through November 15, 2010. (Gutfleish Cert., Ex. D)[3] Trustee's counsel points out that counsel for Mr. Sinetos appeared at the first hearing on the Trustee's motion for partial summary judgment (September 30, 2013). Counsel for Mr. Sinetos requested an opportunity for Mr. Sinetos to respond to the Trustee's outstanding discovery requests and the ability to file papers responsive to the Trustee's motion for partial summary judgment. Ultimately, an order was entered to give Mr. Sinetos until October 30, 2013 to respond to the Trustee's Requests for Admissions and Request to Produce Documents. Mr. Sinetos neither responded to the Requests for Admissions nor produced documents by the deadline. Nor did counsel for Mr. Sinetos timely submit opposition to the Trustee's motion for partial summary judgment.

      Moreover, the untimely opposition that was filed consisted solely of a certification from Mr. Sinetos unsupported by any exhibits. In that certification, Mr. Sinetos speculates that the Debtor's business was actually growing because "Mr. Kwok announced that he was sinking an additional investment of $1,000,000 to give the company more cash flow for opening a location in Georgia." (Sinetos Cert., ¶ 10) No documentation was attached to support either the claimed investment or the improved cash flow. He further states that the Trustee has not met her burden of establishing insolvency because "to date, I have not been shown invoices or any indication

---

[3] In his answer to the Trustee's Complaint, Mr. Sinetos denied that the Debtor was insolvent from July 1, 2008 through November 15, 2010.

that the new company [Debtor] was behind with its creditors before June 2010." (Sinetos Cert. ¶ 16) Counsel for Mr. Sinetos also filed a certification opposing the motion for partial summary judgment, asserting that further discovery was needed to establish the existence of the Debtor's insolvency prior to June 2010. (Spivack Cert. ¶ 5) The opposition by Mr. Spivack is surprising. At the September 30, 2013 hearing, after listening to Trustee's counsel recite the numerous instances in which Mr. Sinetos either failed to meet deadlines or refused to speak with the Trustee's counsel, the Court adjourned the partial summary judgment motion without date to allow counsel to work out the terms of an order providing discovery deadlines for both parties. The court's only admonition was that it would not look favorably on an order that extended the discovery for up to a year. Thereafter, the court received a consent order that (i) established October 30, 2013 as the deadline for Mr. Sinetos to produce documents and serve responses to the Trustee's Requests for Admissions, (ii) provided for the deposition of Mr. Sinetos on November 11, 2013, and (iii) authorized the Trustee to request an expedited re-listing of the partial summary judgment motion if the time deadlines were not met. Counsel for Mr. Sinetos could have and should have made provisions for the discovery that he needed. This order was entered on October 15, 2013. The motion for partial summary judgment was ultimately re-scheduled for December 30, 2013. As of December 30th, there was no compliance with the October 15, 2013 Consent Order. Instead, on the December 30th hearing date, counsel for Mr. Sinetos filed the untimely certifications opposing summary judgment.

## DISCUSSION

a. **Summary Judgment Standard**

Pursuant to Fed. R. Civ. P. 56(a), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The contention that a fact cannot be or is genuinely disputed, must be supported by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), *admissions*, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A) and (B). (added emphasis). An issue of material fact is considered genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A properly supported motion for summary judgment "will not be defeated by the mere existence of some factual dispute between the parties," unless the dispute over those facts has the potential to affect the lawsuit's outcome. *Orsatti v. N.J. State Police,* 71 F.3d 480, 482 (3d Cir. 1995).

Once the moving party satisfies its burden, "the burden shifts to the non-moving party to 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *DeAngelis v. Young (In re Young)*, No 09-1774, 2010 WL 4777626 *5 (Bankr. D.N.J. Nov. 15, 2010) (citing *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). A party may not defeat a motion for summary judgment unless the party sets forth specific facts in

a form that "would be admissible in evidence." *Id*. "The party opposing summary judgment 'may not rest upon the mere allegations or denials of the...pleading,' its response, 'by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'" *Saldana v. Kmart Corp.,* 260 F.3d 228, 232 (3d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); Fed. R. Civ. P. 56(e). If the non-moving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment for the movant. *Id.* (citing *Anderson*, 477 U.S. at 249-50).

### b.  Counts One, Two and Three

Pursuant to Code §§ 547(b) and 550(a), in Count One of the Complaint the Trustee seeks recovery of the APA Transfers totaling $52,270.33 made by the Debtor to Mr. Sinetos within one year prior to the Petition Date. These payments were made to satisfy the Debtor's obligation to Inteco Corp. Similarly, pursuant to Code §§ 547(b) and 550(b), in Count Two of the Complaint the Trustee seeks recovery of the Consulting Transfers totaling $87,729.67 made by the Debtor to Mr. Sinetos. As Trustee's counsel points out in his January 2, 2014 letter to the court, at the December 30, 2013 hearing, counsel for Mr. Sinetos conceded that the Trustee is entitled to summary judgment on Counts One and Two of the Complaint. This concession is significant, but is not relied upon by the court as the Trustee's motion papers and the deemed admissions resulting from the failure by Mr. Sinetos to answer the Trustee's Requests for Admissions provide ample support for summary judgment. Count Three of the Trustee's complaint seeks recovery of the APA Transfers and Consulting Transfers totaling $460,000.00 made within four years prior to the Petition Date. This count relies on Code § 544, N.J.S.A. § 25:2-25a, N.J.S.A. §

25:2-29 and N.J.S.A. § 25:2-30.  Again, based on the Trustee's motion papers and Mr. Sinetos' failure to answer the Trustee's Request for Admissions, there is a sufficient foundation for granting relief in favor of the Trustee on Count Three.

    c. **Trustee's Requests for Admissions**

As described earlier in this opinion, Mr. Sinetos failed to timely answer the Trustee's Requests for Admissions when they were first served by the Trustee.  The court ascribed this failure to his lack of counsel, and, when counsel appeared for Mr. Sinetos, the court readily agreed to extend the date for responses to a date mutually agreed upon by the parties.  The purpose of permitting the parties to fix the time frame for responses was to insure that the deadlines would comport with the needs of the parties.  Despite the court's effort, Mr. Sinetos once again failed to timely submit his responses.  As a result, under Fed. R. Civ. P. 36(a)(3) made applicable by Fed. R. Bankr. P. 7036, the following Requests for Admissions are deemed admitted:

- The Defendant's testimony provided during his 2004 Examination conducted on February 8, 2012 was truthful (Gutfleish Cert., Ex. D at ¶ 1).

- The LLC Agreement accurately memorializes the agreement between the parties to that agreement (Gutfleish Cert., Ex. D at ¶ 6).

- The APA accurately memorializes the agreement between the parties to that agreement (Gutfleish Cert., Ex. D at ¶ 8).

- The Repurchase Agreement accurately memorializes the agreement between the parties to that agreement (Gutfleish Cert., Ex. D at ¶ 10).

- The Defendant received $500,000.00 from Inteco Corp. in accordance with the Repurchase Agreement (Gutfleish Cert., Ex. D at ¶ 11).

- Inteco Corp. issued a promissory note to the Defendant in the amount of $313,622.00 pursuant to the Repurchase Agreement (Gutfleish Cert., Ex. D at ¶ 12).

- The Stock Note Accurately memorializes the agreement between the parties to that promissory note (Gutfleish Cert., Ex. D at ¶ 13).

- Inteco Corp. executed the Stock Note (Gutfleish Cert., Ex. D at ¶ 14).

- The Debtor issued a promissory note to Inteco Corp. in the amount of $313,622.00 pursuant to the APA (Gutfleish Cert., Ex. D at ¶ 16).

- The APA Note accurately memorializes the agreement between the parties to that promissory note (Gutfleish Cert., Ex. D at ¶ 17).

- The Debtor executed the APA Note (Gutfleish Cert., Ex. D at ¶ 18).

- The Defendant received the Transfers (Gutfleish Cert., Ex. D at ¶ 20).

- $7,467.19 of each of the Transfers was made on account of the APA, which obligated the Debtor to make monthly payments to Inteco Corp. in the amount of $7,467.19 (Gutfleish Cert., Ex. D at ¶ 22).

- The APA Transfers were made on account of a debt owed by Inteco Corp. to the parties to that Agreement (Gutfleish Cert., Ex. D at ¶ 25).

- The Consulting Agreement was executed with the intent to repay the Defendant's investments in and loans to Inteco Corp. and the Debtor (Gutfleish Cert., Ex. D at ¶¶ 26-27).

- $12,532.81 of each of the Transfers was made on account of the Consulting Agreement (Gutfleish Cert., Ex. D at ¶ 28).

- The Consulting Transfers were made on account of a debt owed by the Debtor to the Defendant (Gutfleish Cert., Ex. D at ¶ 30)

- The Defendant was a member of the Debtor at all times from May 9, 2008 through the Petition Date (Gutfleish Cert., Ex. D at ¶ 31).

- Each of the Transfers was made on account of a debt owed by the Debtor prior to the dates on which each of the payments was made (Gutfleish Cert., Ex. D at ¶ 32).

- Each of the Transfers reduced the Debtor's available funds to pay other creditors (Gutfleish Cert., Ex. D at ¶ 33).

- The Debtor was insolvent at all times from July 1, 2008 through the Petition Date (Gutfleish Cert., Ex. D at ¶ 34).

A litigant may request admissions on a "broad range of matters, including ultimate facts as well as application of law to facts." *Carney v. IRS (In re Carney)*, 258 F.3d 415, 419 (5th Cir. 2001). If an answering party does not timely serve written answers and/or objects to requests for admission, the requests are deemed admitted.[4] *See Sunoco, Inc. (R&M) v. MX Wholesale Fuel Corp.*, 565 F. Supp. 2d 572, 577 (D.N.J. 2008) (citing *Goodman v. Mead Johnson & Co.*, 534 F. 2d 566, 573 (3d Cir. 1976) (Amount owed to plaintiff deemed admitted where defendant did not claim requests to admit were improper or provide any reason why it failed to timely provide responses); *In re Stevens*, 322 B.R. 133 (Bankr. E.D. Mo. 2005); *In re Kenny*, 276 B.R. 579 (Bankr. S.D. Ohio 2002)   Further, a matter admitted under Rule 36 is conclusively established unless a motion to withdraw or amend the admission is made.[5] Although the summary judgment motion was adjourned at the request of Mr. Sinetos' counsel, no motion was made to withdraw the deemed admissions. As a result, the deemed admissions recited *supra* are conclusive and may be relied upon by the court in connection with the summary judgment motion.[6] *See Anchorage Associates v. Virgin Island Board of Tax Review*, 922 F. 2d 168, 176 n.7 (3d Cir. 1990) (Rule 36 admissions are conclusive for purposes of the litigation and are sufficient to

---

[4]Rule 36 provides as follows a matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.
Fed. R. Civ. P. 36(a)(3)

[5]Fed. R. Civ. P. 36(b).

[6]Rule 56(c)1) provides that a party asserting that a fact cannot be disputed may support that assertion by relying on admissions. Fed, R. Civ. P. 56(c)(1), made applicable by Fed. R. Bankr. P. 56(c).

support summary judgment); *Sunoco, Inc. (R&M) v. MX Wholesale Fuel Corp.*, 565 F. Supp. 2d 572, 577 (D.N.J. 2008); *In re Elrod Holdings Corp.,* 426 B.R. 106, 112-113 (Bankr. D. Del. 2010 (Failure to respond to request for admissions coupled with failure to object or respond to discovery resulted in deemed admissions sufficient to support summary judgment in favor of preference defendant); *In re Stevens*, 322 B.R. 133, 136 (Bankr. E.D. Mo. 2005).

Nor does the denial of the Debtor's insolvency in Mr. Sinetos' answer prevent entry of summary judgment against him on Counts One, Two and Three. To defeat summary judgment, "a party cannot rest simply on the allegations in the pleadings. Rather, it must rely on affidavits, depositions, answers to interrogatories, or admissions on file." *Bhatla v. U.S. Capital Corp.*, 990 F. 2d 780, 787 (3d Cir. 1993). With the exception of the deemed admissions, Mr. Sinetos has not supplied any of the documents described in *Bhatla*, and the deemed admissions establish liability rather than non-liability. Similarly, the speculation by Mr. Sinetos in his certification that Mr. Kwok's infusion of funds into the Debtor effectively counters the deemed admission of insolvency is without merit, because:

> ... a party cannot attack issues of fact established in admissions by resisting a motion for summary judgment... Affidavits and depositions entered in opposition to summary judgment that attempt to establish issues of fact cannot refute default admissions. This result is based on sound policy. Rule 36 allows parties to narrow the issues to be resolved at trial by effectively identifying and eliminating those matters on which the parties agree. This function would be lost if parties were permitted to contest under Rule 56 a matter concluded under Rule 36.

*U.S. v. Kasuboski,* 834 F.2d 1345, 1350 (7th Cir. 1987) (citations omitted)

Having examined the deposition testimony of Mr. Sinetos and having determined that the facts set forth in the Trustee's Requests for Admissions (Gutfleish Cert., Ex. D) are deemed

admitted, the court finds there are no genuine issues of material fact that require trial. Accordingly, summary judgment may be granted as a matter of law.

## CONCLUSION

Summary judgment is granted on Counts One, Two, and Three of the Complaint in favor of Plaintiff and against Defendant such that transfers totaling $460,000.00 are avoided and are recoverable pursuant to 11 U.S.C. §§ 547(b), 544, 550, and N.J.S.A. 25:2-25a, et seq.

Date:  June 17, 2014            ____/S/_____
NOVALYN L. WINFIELD
United States Bankruptcy Judge